BENJAMIN A. COX and others v. JOSEPH COX and others.

*Will, division of land by—Ejectment, evidence in—Description— Quantity.*

1. Where a will designates and assigns to each of the testator's children a share of his land, *it was held* that the same was divided among them, and no other proceeding was necessary for that purpose.

2. In such case, an action in nature of ejectment is a proper remedy to establish a dividing line between two of the devisees, where their claims as to the location of the tracts devised are in conflict.

3. A devise of two hundred acres to A, adjoining the land he now owns, "beginning at the line near B's and running straight across to the back line toward M's, taking the eighty-two acres first, out making out the complement of the balance," is sufficiently certain in its description to admit of parol evidence to locate the tract of two hundred acres—which includes the eighty-two acres.

4. Quantity ordinarily constitutes no part of the description, but when the boundaries are doubtful, it becomes an important element.

(*Reddick* v. *Leggett,* 3 Mur., 529; *Proctor* v. *Pool,* 4 Dev., 370; *Stewart* v. *Salmonds,* 74 N. C., 518, cited and approved.)

EJECTMENT, tried at Spring Term, 1883, of MOORE Superior Court, before *Philips, J.*

Cox *v*. Cox.

The plaintiffs, who were minors at the time this action was commenced, suing by their next friend, claim the land in controversy under a devise in the will of their grand-father, Thomas Cox, Sr., deceased, to their father, Thomas Cox, Jr., deceased, which devise was in these words:

" I give and devise to my son, Thomas Cox, two hundred acres, adjoining the land he now owns, beginning at the line near A. K. Wicker's, and running straight across to the back line towards Torguill McNeill's, taking the eighty-two acres first and making out the complement of the balance."

The will also contains the following devises: " I give and devise to my son Rufus Cox all the lands on the west side of the road adjoining my sons, Henry A. Cox and Thomas. Cox."

" I give and devise to my son Joseph Cox my lands on the east side of the road, where the creek enters into the river, thence up the creek where Wash had a patch, thence up the creek to the next bend at the fish trap, thence up the little creek to the poplar spring, thence up the creek to where Thomas Cox's line comes across, thence to the big road."

" I give and devise to my son Henry A. Cox the tract of. land on which he now lives, one hundred acres."

There are other devises of land, but these mentioned are the most important.

All the parties claimed under the will of Thomas Cox, Sr., who had purchased a large tract of land, including the tracts devised as aforesaid, from William Murchison, by deed bearing date 8th October, 1839, conveying two tracts,. one of eleven hundred and forty acres, and another of two hundred acres. This deed was read in evidence by the plaintiffs. They also read in evidence a deed from Archibald G. Douglas to Thomas Cox, the testator, dated 28th of May, 1858, conveying two tracts, one of one hundred acres,

17

and the other eighty-two acres; also a deed from John God-frey to their father, Thomas Cox, Jr., dated 7th day of August, 1858, conveying fifty acres.

The surveyor (Kelly) who had been appointed by the court to survey the land in controversy for the trial of the cause, reported the plat which is set out in this statement.

PLAT OF SURVEY.

The surveyor testified that the eleven hundred and forty acres conveyed by Murchison to Thomas Cox, Sr., covered all the land in the plat except what was called the "eighty-two acre tract," which on measurement was found to contain only sixty-five acres, and the tract of fifty acres, owned by Thomas Cox, Jr. He testified to the location of the eighty-two acre tract and the fifty acre tract of Thomas Cox, Jr., as indicated on the plat.

It was in evidence that A. K. Wicker's land adjoined the eighty-two acre tract on the southwest, the dividing line being represented on the plat by the line running northwest from the figure 1, and near which line is Wicker's house.

It was also in evidence that Torquil McNeill's land adjoined the testator's land on the northeast, the dividing line being represented on the plat by the line "H" to "4 a," and his house by the letter "M."

The Cox road indicated on the plat runs between the shares of Rufus Cox and Joseph Cox—that of Joseph lying to the east, and that of Rufus to the west of the road.

The chief matter in dispute being, what is the dividing line under the will between Thomas Cox, Jr.'s, share and his brothers Rufus and Joseph, the surveyor Kelly, for the information of the court, ran four lines as the dividing lines represented on the plat as "A, B, C and D," with the following results as to the quantity contained in their respective shares under the will:

Line A gives Rufus  Cox 270 acres.
"     "     "   Joseph  Cox 165    "
"     "     "   Thomas Cox 250    "
"     B    "   Rufus   Cox  284    "
"     "     "   Joseph  Cox  201    "
"     "     "   Thomas Cox 200    "
"     C    "   Rufus   Cox. 306    "
"     "     "   Joseph  Cox 174    "
"     "     "   Thomas Cox 200    "
"     D    "   Thomas Cox only 100 acres.

The letter "a" on the creek in the plat represents Wash's patch; "c" the fish trap; the poplar spring is near "4 a," on little creek; "xx" Rufus Cox's field of about seven or eight acres; "X" Joseph Cox's field of about five acres; "O," Rufus Cox's house, and "R" an old field; "00," tenant's house; "A. K. W.," Wicker's land.

There was evidence tending to show that, if "A" was the dividing line, all the defendants were trespassers; the Dalrymples being in possession of a small piece of land which Esther Dalrymple purchased from Joseph Cox lying between the lines "A" and "B." And if "B" was the dividing line, that then, Rufus Cox and George S. Cole, who claimed under Joseph Cox, only were trespassers. But if "C" was the dividing line, George S. Cole only was a trespasser.

Upon the foregoing case made by the plaintiffs, the defendants, without introducing evidence, insisted that the plaintiffs could not recover in this action:

1. Because the devise to Thomas Cox, Jr., is void for uncertainty.

2. Because ejectment is not the remedy.

His Honor intimated that the plaintiffs could not recover in this action for the reason there had been no division of the lands of the testator under the will, and no proceedings ever had to establish the lines between the sons of the testator.

The plaintiff in deference to His Honor's opinion submitted to a non-suit and appealed.

*Messrs. R. P. Buxton* and *M. S. Robins*, for plaintiffs.
*Messrs McIver & Black* and *John Manning*, for defendants.

ASHE, J. The defendants rested their defence upon two grounds; first, that the devise to Thomas Cox, Jr., was void

for uncertainty; and secondly, that ejectment was not the proper remedy.

His Honor expressed no opinion upon the first point, but intimated the opinion that the plaintiffs could not recover, for the reason there had been no division of the land of the testator under the will, and no proceedings ever had to establish the lines between the sons of the testator. In this there was error. The lands of the testator were divided by the will itself. They were apportioned out among all the testator's children, and each one's share designated and assigned to him. There could have been no further division among them, for there was no unity of possession between them in any one of the tracts devised. This was evidently one way by which the dividing line between Thomas Cox and his brothers, Rufus and Joseph, could be established, to wit, by an action in nature of ejectment. But His Honor took that question from the jury by the intimation of the opinion which drove the plaintiffs to a nonsuit.

We might stop here and award to the plaintiffs a *venire de novo*, to which they are entitled. But as the case will be again tried, and the other ground of defence, taken by the defendants on the last trial, will probably be again pressed, we deem it advisable to consider that point, as it has been the principal subject of contention in the argument before this court.

There can be no doubt the testator, Thomas Cox, Sr., intended to divide out his lands among all his children, and that his son, Thomas Cox, jr., should have as his share, two hundred acres, to be located on the north of the lands devised to his two brothers, Rufus and Joseph. But they and the other defendants undertake to thwart the will of their father by insisting that their brother Thomas, by reason of the uncertainty in the description of the land devised to him, took under the will of the testator only the eighty-two acre tract. This position cannot be maintained,

for we are of opinion the description of the land devised to him, though somewhat imperfect and left in doubt, is yet sufficiently certain to admit of parol proof to fix its location and boundary ; or, *in other words, to fit the description to the thing.*

The only difficulty in the case is in the line which begins *at the line near A. K. Wicker's and runs straight across to the back line towards Torguill McNeill's.*

Wherever that line is, the land devised to Thomas Cox lies north of it, for the description is two hundred acres adjoining his (Thomas Cox's) land taking in the eighty-two acres, and the beginning is in the lower line of that tract, between the figures 1 and 2, that being the line near Wicker's and runs straight across toward Torguill McNeill's land.

The call for the beginning *at* the line near Wicker's is answered by beginning at figure 2 on the plat. The call in the devise is, for a beginning at the line near A. K. Wicker's. The line from 1 to 2 is a line near Wicker's land. The will does not say Wicker's house. Then beginning at figure 2, which is the end of the line, the call in the devise is answered, for every corner is at the termination of two lines when they meet, and may be said to be *at* each of them. To begin at any intermediate point in the line from 1 to 2, and run straight across to the back line so as to include two hundred acres would necessarily cut off an angle of the eighty-two acre tract, but the whole of that tract is to be taken in first.

Figure 2 then being established as the beginning, the line that runs thence straight across to the back line towards McNeill's must cross the creek, for the southern portion of the eleven hundred and forty acres devised to Joseph Cox is described as bounded on the east by the creek and running up the creek to where Thomas Cox's line crosses.

Cox v. Cox.

Where the description is constituted of certain localities and specifications, the location of the land must correspond with them.

Here, we have the Cox tract; the eighty-two acres which is to be included; the line from 1 to 2 where the beginning is to be fixed ; the line from 2, running across the creek to McNeill's land ; and lastly, the quantity—two hundred acres.

Quantity ordinarily constitutes no part of a description, but in doubtful cases it becomes an important element:

In *Reddick* v. *Legget,* 3 Mur. 529, Judge HENDERSON said, it is in no way material, except in lands where the boundaries are doubtful, and then it may be thrown into the one scale or the other as a circumstance.

In *Proctor* v. *Pool,* 4 Dev., 370, Chief Justice RUFFIN said, it is true that quantity is not generally descriptive, but it may be so; as if one owns two town lots, one of half an acre and the other of an acre, and grant his acre lot, the larger lot will pass, though a few feet more or less than an acre.

In the case of *Stewart* v. *Salmonds,* 74 N. C , 518, where the plaintiff's claim was twenty-nine acres of the north side of a tract of land containing one hundred and twenty-nine acres, Chief Justice PEARSON, speaking for the court, said : " Any competent surveyor can do it by running an experimental line on the plat, strike a line east and west, calculate the number of acres north of the line ; if over twenty-nine acres, move the line to the north, if less than twenty-nine acres, move the line to the south until you take in exactly twenty-nine acres, then go into the field and with compass and chain and by means of the experimental lines find the east and west line, that will cut off twenty-nine acres and make it." He adds, " this may be a rude way of doing the thing, but the twenty-nine acres may be identified with sufficient certainty for all practical purposes."

This is what the surveyor has done in this case. Here, as there, the quantity of acres was an important element in the description. Here, as there, experimental lines were run by the surveyor with the view of ascertaining a line from the beginning in the line near Wicker's to the Mc-Neill land that would give two hundred acres of land north of that line. But no such line could be established as the true dividing line unless the land lying north of it, and sought to be located, should answer all the specifications in the description of the devise; e. g., it must give the Cox tract; include the eighty-two acre tract; contain two hundred acres; and the line must begin at the line near Wicker's, and cross the creek to McNeill's land.

The surveyor ran the lines "A" "B" "C" and "D" as designated on the plat. The line "A" gave the plaintiff two hundred and fifty acres, and did not cross the creek. That could not be the true line, because it wanted two elements in the description. Line "C" could not be the line, because it did not begin on the line near Wicker's, and therefore lacked one element of the description. Line "D" is out of the question. Line "B" gives just the two hundred acres with each of the other specifications in the description contained in the devise, and must therefore be the line.

"B" being established as the dividing line between the Thomas Cox portion and those devised to Rufus Cox and Joseph Cox, it is a question for the jury whether the defendants or any of them are in possession of any of the two hundred acres devised to Thomas Cox, Jr., lying north of that line.

There is error. Let this be certified to the superior court of Moore county that a *venire de novo* may be awarded.

Error.                                        *Venire de novo.*