A. J. SMITH v. B. H. FITE.

*Evidence—Locating Land.*

1. Where a party introduces a deed in evidence, which he intends to use as color of title, he must prove that its boundaries cover the land in dispute, to give legal efficacy to his possession.

2. It is error to allow a jury on no evidence, or only on hypothetical evidence, to locate the land described in a deed.

This was a CIVIL ACTION for the recovery of land, tried before *Gilmer, Judge,* and a jury, at Fall Term, 1883, of GASTON Superior Court.

There was a verdict and judgment for the defendant from which the plaintiff appealed. *

*Messrs. G. F. Bason, Batchelor & Devereux* and *Hoke & Hoke,* for the plaintiff.

*Mr. W. P. Bynum,* for the defendant.

---

*The reporter deems it unnecessary to print the plat which accompanies the record, as the decision of the Court turned upon other points.

SMITH, C. J.   The case prepared on the appeal is so obscure in its statement, and the accompanying plat or map of the survey so deficient in explanation upon the evidence, that we may fail to understand the facts and the exceptions to the rulings intended to be reviewed, and in consequence be unable to reach a satisfactory solution of the controversy.

The plaintiff derived title to the territory circumscribed by the lines A, B, C, D, E, F, G, H, I, in the plat, under a deed executed in March, 1856, by one Hoffman to Eliza Smith, his grandmother, and successive descents to his father and to himself, accompanied by an alleged continuous adversary occupation since by the successive owners up to the time of the defendant's entry, made shortly before the bringing the action.   The title to a larger tract, of which that described in the deed forms part, had been divested out of the State by a grant issued in the year 1750.

The area in dispute and held by the defendant is represented in the space between the lines 1, 2, 3, 4.

The territory described in the Caldwell deed lies within the boundaries 5, 6, 7, 8, 9, 10, 11, 12, and these do not reach the Hoffman lines (marked A, B, C, D, E, F, G, H, I), while they run a nearly parallel course, and leave an intervening space covered at one point by the disputed part.   This deed is made to one Beasley, and bears date in 1842.   The defendant also exhibited in evidence a deed from one Gingles, by whose name the land therein conveyed is known, to Jasper Stowe, also of date anterior to that of Hoffman, and under which the defendant claims in connection with a long adversary occupation by preceding owners and himself.

Each party shows an occupancy and cultivation up to a divisional fence by the respective claimants, neither passing beyond that limit.

The proper location of this fence, long since removed, became thus material in ascertaining the extent of their respective possessions under the several deeds, or with them in perfecting title.

The obvious result of this separate occupation of land embraced in the Hoffman and Gingles deeds, and common to both, up to and on either side of the divisional fence, is to vest the title in each to so much as is measured by their respective possessions, and this without regard to seniority in the deeds. It was necessary, therefore, for the defendant, in using the Gingles deed as color of title, to ascertain its boundaries so as to give legal efficacy to his possession for the prescribed period. The lines of this deed are not given, nor so far as appears have they been surveyed and located. On the contrary the surveyor, from whom a hypothetical opinion was obtained resting upon no definite data, and in itself too vague to furnish material aid in the location, testifies that no papers were shown him "by which he could run the Gingles or any other lines," and hence the evidence was absent that the defendant's possession was under color or other than a trespass. It is equally apparent that the disputed territory is within the lines of the Hoffman deed as shown in the plat, and this affords color of title sufficient, with the occupation, to put the estate in the plaintiff. There was, therefore, error in permitting the jury, without evidence, to undertake to locate the land contained in the Gingles deed, and to render a verdict based upon a location wholly conjectural, yet requisite to such finding. It is possible we may misapprehend the facts, but such we understand them to be as they appear in the record.

Without adverting to other exceptions or expressing an opinion as to their legal sufficiency, we are constrained, for the erroneous instruction pointed out, to give the appellant a trial before another jury.

Let this be certified to the end that the verdict be set aside and a *venire de novo* awarded.

Error. Reversed.