## J. W. PERRY v. J. K. SCOTT.

### Deed—Description.

1. A description of land in a deed as "lying and being in the county of Jones and bounded as follows, to-wit: On the south side of Trent river, adjoining the lands of Colgrove, McDaniel and others, containing three hundred and sixty acres, more or less," is not so vague and indefinite as to render the conveyance void; but may be aided by parol evidence.

2. The decisions of this Court in *Blow* v. *Vaughan*, 105 N. C., 198, and *Wilson* v. *Jo'mson, Ibid*, 211, so far as they are in conflict with this opinion, are overruled.

(AVERY, J., dissenting).

This is a SPECIAL PROCEEDING for partition, begun in the Superior Court of JONES County, and tried at Fall Term, 1890 (upon issues joined before the Clerk), *Armfield, J.*, presiding.

The defendant claimed under deed made by a Sheriff on sale under execution, in which the land was described as "lying and being in the county of Jones, bounded as follows, to-wit: On the south side of the Trent river, adjoining the lands of Colgrove, McDaniel and others, containing three hundred and sixty acres, more or less."

The plaintiff insisted that the description in this deed was so vague and uncertain that parol evidence could not be received in aid of it, but his Honor being of a contrary opinion, admitted the evidence, and plaintiff excepted.

There was judgment for defendant, and plaintiff appealed.

*Mr. G. V. Strong*, for plaintiff.
No counsel, *contra*.

SHEPHERD, J.: The single question presented for our consideration is whether the description in the deed offered by

the defendant is so vague and uncertain as to preclude any testimony whatever tending to fit it to the land in controversy. In other words, is it a *patent* ambiguity, which, according to Lord BACON, "is never holpen by averment," and in the language of PEARSON, J., entirely "a question of construction" for the Court? *Deaf and Dumb Institute* v. *Norwood,* Busbee's Eq., 65.

As the sufficiency of the testimony offered by the defendant is not made the subject of exception, and as such testimony is not set forth in the case upon appeal, it must follow that if we can conceive of any testimony which would with reasonable certainty fit the description to the land in question, the ruling of his Honor should be affirmed.

The deed of the Sheriff reciting a judgment against Daniel Perry, an execution, levy and a sale under *venditioni exponas,* it must, upon every principle of construction, be inferred that it is the land of the said Perry that is sought to be conveyed, and this being so, we are of the opinion that testimony to the effect that at the time of the sale the said Perry owned but one distinct tract of land in the county of Jones "on the south side of Trent river adjoining the lands of Colgrove, McDaniel and others containing three hundred and sixty acres, more or less," would have warranted the jury in finding that the land had been sufficiently identified. This result, it seems, would have been conceded had the words "bounded" or "bounded by" been substituted for the word "adjoining," and it is earnestly insisted that, by reason of this distinction, the deed is void upon its face.

Without adverting to the presence of the word " bounded " in the first and more general part of the description, and pretermitting the question whether that word may not well be transposed so as to be construed in connection with the last and more particular language there used, we will proceed to consider the correctness of the contention of the plaintiff. In doing this, it is our purpose to avoid a discussion of

the general doctrine of description in deeds, believing, as we do, that it is unprofitable, if not dangerous, to anticipate cases that may hereafter arise upon this very difficult and vexatious subject.

The principle asserted finds support in what is said in *Blow* v. *Vaughan*, 105 N. C , 198, and the subsequent decision in the case of *Wilson* v. *Johnson, Ibid*, 211; but upon a very careful examination of the previous decisions of this Court, induced by the reflection that its adoption may materially affect many titles in this State, about which there has been and can really be no doubt as to the actual identity of the lands conveyed, we are satisfied that the distinction mentioned is not sustained either by reason or authority, and that the overwhelming weight of judicial decision is against it.

In view of the very serious consequences that may follow its further recognition, we think that what we conceive to be a mistake should be corrected, and, as PEARSON, C. J., says, " the sooner the better, for if the error is allowed to spread, it may insinuate itself into so many parts and become so much ramified as to make it impossible to eradicate it without doing more harm than good.   But if the seed has not spread too much, pull it up and throw it away."   *Gaskill* v. *King*, 12 Ired., 223.

An examination of the case of *Blow* v. *Vaughan, supra*, will show that the decision was clearly correct, but that what was said by the learned Justice who delivered the opinion, as bearing upon the particular point now under consideration, was unnecessary to the disposition of the appeal.   The description in the deed was " fifty acres of land lying in the county of Hertford and bounded as follows:   By the lands of John H. Liverman, John P. Liverman and Isaac Snipes." The Court held that parol testimony was admissible to fit the description to the land, but as it appeared that the description embraced a tract of one hundred and twenty-five acres, and there was no sufficient testimony to locate any

particular fifty acres, it was determined that the land sued for had not been identified. The complaint substituted the word "adjoining" for "bounded," "but it was not insisted (says the opinion) that there was a fatal variance between the land declared for in the complaint and that embraced in the descriptive clause of the deed offered to show title." The discussion, however, extended to the sufficiency of the complaint, and while it was said that the description, as there stated, was too indefinite to be susceptible of explanation by parol testimony, it was also explicitly declared that as the complaint might "have been amended or incorrectly copied," the action would not be dismissed because of the use of the word "adjoining" in the place of the word "bounded," nor because of variance between the allegation and proof, "for," continues the opinion, "the point was not made as it might have been." From this it is plainly seen that the statement that the description contained in the complaint was too vague and indefinite, was unnecessary to the determination of the appeal, and was in that sense a *dictum* and not necessarily binding on the Court. It is true, however, that the principle was approved in *Wilson* v. *Johnson, supra* (decided at the same term), but by a reference to the very brief opinion in that case, it will appear that the decision was founded solely upon what was said in *Blow* v. *Vaughan, supra.*

Under these circumstances we feel at liberty to examine into the previous decisions of the Court, with a view of determining whether the principle mentioned should remain unquestioned and become settled judicial authority in this State.

The great practical importance of the question must be our excuse for a somewhat extended and perhaps tedious examination of the cases upon the subject.

*First,* let us look into "the reason of the thing," without reference to the authorities.

When one has paid out his money and taken a deed for land, it would offend every principle of natural justice to deprive him of his property unless it is required by some positive rule of law, the strict enforcement of which is imperatively demanded on the ground of public policy. Therefore it is that the Courts will not lightly pronounce deeds to be void because of imperfect description if the land can with reasonable certainty be identified; and in the numerous decisions of this Court upon the infinite variety of descriptions presented for construction, there can be seen but one clear and unwavering purpose in the minds of the Judges, and that is, without contravening the statute of frauds, to give effect to the true intention of the parties. *Ut res magis valeat quam pereat.* In doing this, they have found it impossible, as RUFFIN, C. J , once said, to formulate any artificial rules by which, in many cases, this intention is to be ascertained, and they have necessarily been compelled to resort, in such instances, to those principles of reasoning which commend themselves to men of plain and ordinary understanding.

Now if I own a distinct tract of land and describe it in a conveyance as a tract of so many acres, more or less, "adjoining the lands of A, B, C and others," would it occur to any layman of common intelligence that the description was so vague and indefinite on its face that it would be useless to attempt to identify it? And if it were shown that I owned but one tract adjoining A, B, C and others, and that I had no other lands whatever, or none adjoining those parties, would he not be astonished when told that the deed furnished no means by which the land could be identified, and that on account of the use of the word "adjoining" instead of "bounded," or "bounded by," it conveyed nothing whatever? We think it would be a troublesome task to make him understand why, in such a case, these latter words are necessary, while he could very readily appreciate their sig-

nificance if the land described was not a distinct tract, or was (as in *Allen* v. *Chambers*, 4 Ired. Eq., 125) a part of a larger tract.

In such cases the words mentioned, or others of similar import, might become very material; but we repeat that it is not easy to understand how they are so important in the case put by way of illustration.

Neither would the argument in *Harrell* v. *Butler*, 92 N. C., 20, be appreciated, for it cannot be seen how such a description would apply (as is said in that case) "to one tract as well as another that adjoins" them, when there is only one tract belonging to the grantor that does so adjoin them ; nor can it be understood what difference it makes whether this one distinct tract might "lie as well on the one side as the other of the lands belonging to those persons."

That the description we have mentioned is not so vague and indefinite as to exclude the introduction of parol testimony to fit it to the land, is, we think, well sustained by the very great preponderance of the decisions in this State. But before referring to these, we will examine the cases cited in support of the contrary view:

In *Horton* v. *Cook*, 1 Jones Eq., 270, the description is dissimilar to ours and the grant was held good. The case, therefore, is not in point.

In *Fuller* v. *Williams*, Busbee Eq., 162, the description is, " Henry Fuller enters one hundred acres of land on the wa·ers of Uharee, adjoining the lands of his own and runs for complement." It was held that the entry was too vague to amount to notice to a junior enterer who had surveyed his land and taken out a grant. A perusal of this case will very clearly suggest that the one hundred acres was but a part of a larger tract.

In *Allen* v. *Chambers*, 4 Ired. Eq , 126, the description is, "a certain tract of land lying on Flat river, including Taylor Hicks' spring house-and lot, adjoining the lands of Louis,

Davies, Womack and others." It was declared too indefi-
nite, " because it mentions no quantity, nor how any land is
to be *laid off* around the improvements of Hicks." It is
manifest that the Court did not decide that the word " adjoin-
ing " would have been insufficient had the whole tract been
conveyed; and that the Court considered that it was a part
of a larger tract, is clearly evident from the words " to be laid
off," etc., as well as from the facts appearing in the evidence.

In *Grier* v. *Rhyne*, 69 N. C., 346, the description is, " a cer-
tain piece of land in the county aforesaid, adjoining the
lands of A and B, being a part of the Alexander tract, sup-
posed to contain thirty or thirty-five acres." It appearing
that the tract out of which this quantity was to be taken
contained seventy acres, and there being nothing to locate
the same, it was held that the land was not identified.

We feel sure that these decisions are not applicable to the
case put by us, in which the whole of a distinct tract is the
subject of the conveyance.

In *Dickens* v. *Barnes*, 79 N. C., 490, the description is, " one
tract of land lying and being in the county aforesaid, adjoin-
ing the lands of John A. Phelps and Norfleet Pender, contain-
ing twenty acres, more or less." The description omits the
words " and others," which seem to have been regarded, in
some cases of doubt, as important (see *Harrell* v. *Butler, supra*),
and the decision is therefore not precisely in point. In *Harrell*
v. *Butler* it is very nearly intimated that *Dickens* v. *Barnes*
is overruled by *Farmer* v. *Batts*, 83 N. C., 387. In Harrell's
case (which seems to be more in point than any of the others
cited), the description was "all my interest in a piece of
land adjoining the lands of J. K. and others." The Court
held it to be insufficient, and distinguished it from *Farmer*
v. *Batts*, because no *quantity* was stated ; whereas, in our case,
both the quantity and the words " and others " are set forth.
It will be seen that none of the foregoing cases are directly
in point, and without pausing to discuss the very nice shades

of distinction upon which some of them appear to have been decided, we will now proceed to mention several of the many decisions which, it seems to us, undoubtedly sustain our view. In doing this, we will (as was done in *Blow* v. *Vaughan, supra*) include the cases in which the words " and others" are omitted ; for if, as suggested in some of the decisions (see *Harrell's case, supra*), their presence is considered as making the description more definite, the cases sustaining descriptions without those words are all the more forcible as authority. Besides, they are important upon the question more immediately under consideration, to-wit, the sufficiency of the word "adjoining," when used as a part of the descriptive clause of a deed in certain instances.

In *Hinton* v. *Roach*, 95 N. C., 106, the descriptive words, "a certain tract in N. Township, adjoining the lands of H. S. and others, said to contain $37\frac{1}{2}$ acres," were sustained, and thus we have, at the beginning, a case later than any of the foregoing, which is admittedly in point. It will be noted that the Court did not overlook Harrell's case, as Justice ASHE, who delivered the opinion in both cases, cited it among other authorities referred to by him.

In *Wharton* v. *Eborn*, 88 N. C., 344, we have another direct authority. The descriptive words were, " a certain parcel of land situate in B. County on R. Branch, adjoining the lands of W. L. Tyre, Henry Ormand and the lands formerly belonging to B. W. Hodges, and containing 140 acres, it being the same land conveyed by John W. Earle to said Rowland by deed dated May 28th, 1868." The deed from Earle to Rowland does not appear to have been put in evidence, nor was there any testimony as to its boundaries. This eliminates the latter part of the description and leaves it similar to that in *Hinton* v. *Roach, supra.* The surveyor testified that he had surveyed the lines of the adjoining lands and knew the description from the deed, and that no other tract in the county would fit the description. The Court sustained

the description upon this testimony, remarking that, " according to the testimony of the surveyor, the terms used indicate to one acquainted with the water-courses and the *adjoining tracts* called for, the very land in question, and could not have been applicable to any other."

In *Edwards·v. Bowden,* 99 N. C., 80, the description was " a tract lying in G. County, N. C., adjoining the lands of P. L. and R. N., situate on the east side of the road leading from Jerusalem church to P. L.'s, it being a portion of their part of the original Prigden tract, and containing fifty acres." The Court said (MERRIMON, J., delivering the opinion) that if the words "it being a portion of their part of the original Gray R. Bridgers' tract and containing fifty acres," be omitted from the description, it would be substantially like that held to be sufficient in *Kitchen* v. *Herring,* 7 Ired. Eq., 190. The words in that case were "a certain tract of land lying on the south-west side of Black river, adjoining the lands of William Haffland and Martial," and in *McGlawhorn* v. *Worthington,* 98 N. C., 199, the description held to be sufficient was "all that tract or parcel of land situate in said county and bounded as follows: Adjoining the lands of Augustus Brackston, James Hines, T. N. Manning, Cobb, Tripp and others, containing three hundred and sixty acres, more or less." So that if the words of the description were only these: "A tract of land lying in Greene County, North Carolina, adjoining the lands of Patrick Lynch and R. M. Bowden, situate on the east side of the road leading from Jerusalem church to Patrick Lynch's," there could be no reasonable question as to the sufficiency of the description. In the course of the opinion it was further remarked: "Hence, the land is described as a tract, a body of land having descriptive identity, adjoining the lands of," etc. How could it adjoin the lands of the persons named, if it were not designated by some boundary? Here we have an explicit approval

of the efficacy of the word "adjoining," which is fully supported by authorities cited.

Pausing here for a moment, we will remark that the necessity for the presence of the word "my" or "my lands" in such descriptions in conveyances by the owner, as indicated in several of the older cases, seems, from a perusal of the foregoing decisions, to be no longer recognized, and their immateriality is distinctly declared by the late distinguished Chief Justice in *Farmer* v. *Batts, supra,* where he says "that the assertion of title in the vendor is not less unequivocally involved in the very act of disposing of it as his property." It would indeed seem but charitable to assume that he who undertakes to convey property, intends to dispose of what he claims to be his own.

But to resume: In additon to other cases that may be cited, we have a series of decisions as to the sufficiency of levies on executions issued by Justices of the Peace under a statute wich required the officer to designate "the lands and tenements he has levied on, where situate, on what watercourse and whose land it *adjoins*." Revised Code, ch. 62, § 16.

It is urged that these decisions ought to be confined to cases arising under the statute, and should not be considered in the construction of ordinary conveyances. But if we examine into the purpose of the statute, it will plainly appear that such a contention is without foundation. Under the former law, the land of the judgment debtor was bound by the *fieri facias,* and it was not essential to the acquisition of a lien that a levy should have been made. It was otherwise when an execution was issued by a Justice of the Peace, in which case the lien was created only by the levy, which must, says PEARSON, J., have had "a certain degree of particularity so as to identify the land and enable the Sheriff to sell under the *venditioni exponas,* and of which notice must have been given." *Judge* v. *Houston,* 12 Ired., 113. It was for the very purpose of insuring this particularity that

the statute was enacted, and it is quite difficult to understand, why (in the solicitude of the Court to. uphold deeds and effectuate the intention of the parties) this plain and unequivocal legislative construction should not be followed in all cases. That it has been so recognized and acted upon in the construction of ordinary contracts and deeds, is manifest from several of our decisions. Notably is this so in *Kitchen* v. *Herring, supra,* where it is said that "the description in this contract is similar to that constantly made by constables in levies upon land, from which Sheriffs have no difficulty as to what land to sell and how to make deeds." See also *Farmer* v. *Batts, supra,* in which *Ward* v. *Saunders,* 6 Iredell, 382 (a case relating to a Justice's levy), was cited as authority, and where the application of such decisions to descriptions generally is expressly admitted and acted upon.

We will now refer to a few of these descriptions which have been held sufficient:

"Levied on the lands and tenements of Isham Doby, adjoining the lands of Allan Newsome, Claiborne Newsome and others." *Ward* v. *Saunders, supra.*

"Levied on the legal and equitable interest of Abraham Paul to 450 acres of land, more or less, in R. County, adjoining the lands of Giles McLain, Dugald McCullom, John McLain and others." *McLean* v. *Paul,* 5 Ired., 22.

"The lands of defendant in the County of Chatham, on waters of Tyson creek, adjoining the lands of Bryant Burroughs and others, containing 200 acres, more or less." *Hilliard* v. *Phillips,* 81 N. C., 99.

"Levied this execution on the land of S. M. Hunter, on the east side of the North-East river, adjoining the land of Stephen M. Grady and others." *Judge* v. *Houston, supra.*

We could cite other cases in support of the sufficiency of the word "adjoining" when used as indicated in the example we have put, but it would seem unnecessary in the presence of this consensus of judicial opinion, and we are now

somewhat surprised that there should ever have been any doubt-upon the subject.

In consideration of this great weight of authority, and in view of the serious results which may follow a further approval of the principle in question, we think that we should go back to where we stood before the *dictum* in the case of *Blow* v. *Vaughan, supra;* and although we may often be perplexed in deciding particular cases of this character by reason of the inherent difficulties of the subject, it is far better, in our opinion, to meet these as they arise, with an anxious effort to give effect to the intention of the parties, than by the adoption of a procrustean rule, to shut out, in many instances, all inquiry whatever. The other exceptions are without merit.

AVERY, J. (dissenting): I do not concur in the opinion of the Court. In the early part of the term I prepared a dissenting opinion, which it was my purpose to condense and modify in many respects. But the pressure of more important duties prevented me from doing so, and, as I stand alone in my views, I do not feel willing to occupy so much space for the mere gratification of placing before the profession or the public my reasons for disagreeing with my brethren.

*Per curiam.*                                    Affirmed.